Filed 2/18/14  P. v. Gundlach CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E057860 |
| v. | (Super.Ct.No. RIF1203329) |
| MARVIN EARL GUNDLACH, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Larrie R. Brainard, Judge. (Retired judge of the San Diego Super. Ct., assigned by the Chief Justice pursuant to art. VI, § 6, of the Cal. Const.)  Affirmed.

Gerald J. Miller, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Senior Assistant Attorney General, Lise Jacobson, and Vincent P. LaPietra, Deputy Attorneys General, for Plaintiff and Respondent.

1

# I

## INTRODUCTION

Defendant Marvin Earl Gundlach appeals from judgment entered following a jury conviction for attempting to deter or resist an executive officer from performing an official duty (Pen. Code, § 69;[1] count 1). The jury also found defendant not guilty of battery (§ 242; count 2). During sentencing, the trial court reduced defendant's conviction to a misdemeanor under section 17, subdivision (b). The trial court sentenced defendant to 365 days in jail.

Defendant contends the trial court erred in denying his motion to represent himself (*Faretta*[2] motion). Defendant also argues the trial court erred in excluding evidence of the arresting officer's observations concerning defendant's behavior and the officer's experience regarding mentally unstable individuals. Defendant further requests this court to review the officer's sealed personnel records to determine whether the trial court should have disclosed any of the records under defendant's *Pitchess*[3] request. We reject defendant's contentions and affirm the judgment.

# II

## FACTS

Stephen Silva and his son, Christopher Silva, operated a real estate business. At

---

[1] Unless otherwise noted, all statutory references are to the Penal Code.

[2] *Faretta v. California* (1975) 422 U.S. 806.

[3] *Pitchess v. Superior Court* (1974) 11 Cal.3d 531, 537-538 (*Pitchess*).

the time of the charged offense on May 21, 2012, they had recently purchased through foreclosure a single family residence at 6241 Morton Avenue (the property). The home was the front home of a row of three homes that shared an easement of ingress and egress. Stephen had also just sold the home in the rear. Stephen was informed that the previous owner was parking a car across the easement, preventing access to the rear home. During the afternoon of May 21, 2012, Stephen arrived at the property, intending to ask the owner of the car not to block the easement.

Upon arriving at the property, Stephen approached a group of three individuals, which included defendant, his wife, Elena Gundlach, and Richard Runyan, who had recently been evicted from the property. Stephen believed Richard owned the car blocking the easement. Stephen asked Runyan not to park his car across the driveway easement. Defendant approached Stephen and got into an argument with Stephen regarding the parked car. Defendant yelled and screamed at Stephen.

Stephen called Christopher on his cell phone, to assist him. Christopher arrived a few minutes later. Defendant and Stephen were still arguing. Christopher asked defendant to back off but defendant refused and began screaming at Christopher. Christopher called 911.

Sheriff's Deputy Melendez arrived and attempted to move defendant away from the Silvas. Defendant, who was yelling at the Silvas, began yelling at Melendez. Whenever Melendez gave defendant a directive, defendant disobeyed Melendez's requests. Melendez put his hand on his holster and told defendant to stand back.

3

Defendant yelled at Melendez to take his hand off of his holster and said, "That gun belongs to me." Melendez told defendant, "'You don't tell me what to do.'"

Defendant told Melendez he had no right to be there and had no jurisdiction over him. Defendant said he wanted to take Melendez's car and place Melendez under "citizen's arrest." Defendant added, "'I'm a member of the republic. I'll tell [you] what [] to do and I'm going to place you under citizen's arrest.'" Melendez associated this terminology with the "constitutional movement," in which Melendez had received recent training. He had learned that members of this movement had assaulted and killed peace officers.

Defendant walked towards Melendez with his left fist raised in the air. Melendez thought defendant was going to assault him. With his right hand, defendant attempted to grab Melendez's gun. Melendez called for emergency backup and grabbed defendant's right arm, spun him around, and pushed him to the ground. Defendant fell on his chest, face down. Melendez put his knee in his back and handcuffed his right arm. Melendez initially was unable to handcuff defendant's left arm because defendant resisted. Defendant told Melendez, "'I'm going to fuck you up. You're a dead man. I'm going to kill you.'" Melendez continued to struggle with defendant for about five minutes, until Sheriff's Deputy Bloomer arrived. Melendez was unable, unassisted, to put a handcuff on defendant's left arm.

When Bloomer arrived, defendant was attempting to push himself up with his left arm, which was under his body. Bloomer kicked defendant in his left side in an attempt to distract defendant and grab defendant's left arm. Defendant did not respond and

4

continued to resist. After a brief struggle the two deputies fully handcuffed defendant, while defendant continued to resist, yell, and scream. Defendant refused to stand up. The deputies placed a "hobble" around his ankles, immobilizing his legs and put defendant in the back seat of a patrol car. Defendant moved his handcuffed hands from behind his back to the front of his body, removed the hobble from his ankles, and kicked the back patrol car window. Three or four other deputies arrived and assisted in removing defendant from the patrol car and putting handcuffs and leg restraints on him again. Defendant continued to resist the deputies. While Bloomer transported defendant to the station, defendant yelled and made threats.

Defendant's wife, Elena, testified that, after Stephen got out of his car, he approached defendant, Runyan, and Elena, shouting and began arguing with defendant. Christopher arrived and appeared to want to fight defendant. Defendant moved away from Christopher. When the police arrived, defendant backed away and said the police should not arrest him because he knew the law, section 69. As defendant was walking sideways, toward the house, a deputy grabbed him, pushed him to the ground, and started hitting him. Elena denied seeing defendant raise his fist or reach for the deputy's gun. She did not hear defendant make any threats, and defendant had not been drinking that day. While on the ground, defendant resisted the deputies. Elena took photos of the incident, which the police took as evidence.

Runyan testified he formerly lived at the residence at 6241 Morton Avenue. He was sitting at the residence with defendant and Elena when Stephen arrived. Stephen drove up, jumped out of his car, ran to the easement, and told Runyan he was parking in

5

the easement, blocking egress and ingress to and from the back house. Runyan denied parking in the easement and told Stephen that a woman in the middle house was the person who had parked her car in the easement. Stephen and defendant were talking loudly when Christopher arrived. When Christopher aggressively approached defendant, Stephen told Christopher not to bother defendant. Christopher retreated.

Runyan stated that when Melendez arrived, he spoke to Stephen and then told defendant to step back and defendant turned around and walked away. Melendez then tripped defendant and forced him to the ground. Runyan did not hear defendant tell Melendez to take his hand off his gun or say anything else to Melendez before Melendez tripped defendant. Runyan testified defendant raised his hand but did not make a fist. Runyan said he did not see defendant lunge at Melendez's gun. Defendant was merely lying on the ground, with his hands in the air. When a second officer arrived, the officer immediately kicked defendant in the ribs.

III

*FARETTA* MOTION

Defendant contends the trial court abused its discretion in denying his *Faretta* motion. He argues he has an unqualified right under the federal Constitution to represent himself because he made his *Faretta* motion before empanelment of the jury and there was no evidence his request was made for purposes of delay.

6

On December 6, 2012, the day defendant's trial was scheduled to begin, defendant made a *Marsden*[4] motion, requesting a new attorney. After conducting a *Marsden* hearing, the trial court denied defendant's request, concluding defendant's attorney was competent and had effectively represented defendant. Defendant then requested the court allow him to represent himself (*Faretta* motion). Initially, the trial court was willing to grant defendant's motion but the court ultimately denied defendant's request to represent himself after defendant refused to sign the *Faretta* waiver form or verbally answer questions confirming he was knowingly and intelligently waiving his right to counsel. Defendant demonstrated defiant, uncooperative, and obstreperous behavior, in which he went off on tangents and espoused irrelevant diatribes, despite the court's patient and persistent attempts to guide defendant in addressing the necessary prerequisites for waiving defendant's right to counsel.

A defendant has a constitutional right under the Sixth Amendment to represent himself. (*Faretta v. California, supra,* 422 U.S. at pp. 807, 833-834; *People v. Windham* (1977) 19 Cal.3d 121, 124 (*Windham*); *People v. Howze* (2001) 85 Cal.App.4th 1380, 1397 (*Howze*).) Such a request must be unequivocal and timely made. (*People v. Bradford* (1997) 15 Cal.4th 1229, 1365; *People v. Ruiz* (1983) 142 Cal.App.3d 780, 790 (*Ruiz*).) If the motion, commonly referred to as a *Faretta* motion, is not timely made, the defendant has no absolute right to self-representation and the motion is left to the sound discretion of the trial court. (*People v. Frierson* (1991) 53 Cal.3d 730, 742 (*Frierson*);

---

[4] *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*).

7

*People v. Scott* (2001) 91 Cal.App.4th 1197, 1204 (*Scott*); *Windham,* at p. 128 fn. 5; *Howze,* at p. 1397.)  When exercising its discretion on such a request, the court should consider (1) the quality of counsel's representation, (2) the defendant's prior proclivity to substitute counsel, (3) the reasons for the request, (4) the length and stage of the proceedings, and (5) the disruption or delay which might reasonably be expected to follow the granting of such a motion.  (*Windham,* at p. 128.)  "Additionally, a trial court may deny such a motion if it finds it is made for the purpose of frustrating the orderly administration of justice.  [Citation.]"  (*Howze,* at p. 1397.)

In the instant case, the trial court denied defendant's motion on the grounds it was untimely and granting it would result in defendant disrupting the trial proceedings.  On appeal, defendant asserts his motion was timely under *federal* law.  He urges us to apply the federal law bright-line test applied in determining whether a *Faretta* motion is timely.  (See, e.g., *Moore v. Calderon* (9th Cir. 1997) 108 F.3d 261, 264 [request timely if made before jury impaneled unless used as delay tactic].)  The California Supreme Court, however, has specifically *rejected* application of the federal bright-line test in state courts.  (*People v. Clark* (1992) 3 Cal.4th 41, 99 (*Clark*); *People v. Burton* (1989) 48 Cal.3d 843, 853-854 (*Burton*); see *People v. Avena* (1996) 13 Cal.4th 394, 431 [even on federal questions, California courts are not bound by decisions of federal appellate courts].)  This court is bound by our state high court's holding.  (See *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455-456.)  We therefore apply California law to determine the timeliness of defendant's motion for self-representation.

Under California law, a motion to represent oneself must be made within a reasonable time before commencement of trial in order to be timely. (*Burton, supra,* 48 Cal.3d at p. 852; *Clark, supra,* 3 Cal.4th at p. 98.) The trial court looks to the circumstances at the time of the motion when determining timeliness. (*People v. Marshall* (1997) 15 Cal.4th 1, 24-25, fn. 2; *People v. Moore* (1988) 47 Cal.3d 63, 80.) A finding of untimeliness is not an abuse of discretion if the motion is made when trial is imminent but later postponed. (*People v. Dent* (2003) 30 Cal.4th 213, 221; *Marshall,* at pp. 24-25, fn. 2.) There is no hard and fast rule delineating when a pretrial *Faretta* motion is considered untimely. A *Faretta* motion generally is untimely if made on the "eve of trial" or when the trial is being continued on a day-to-day basis. (*Clark, supra,* 3 Cal.4th 41, 99-100; *Howze, supra,* 85 Cal.App.4th at p. 1397.) Determination of timeliness is addressed on a case-by-case basis. (*Ruiz, supra,* 142 Cal.App.3d at pp. 787-788.)

In the instant case, defendant requested to represent himself on the day his trial was scheduled to begin, after the trial had been previously continued and after the parties had announced ready for trial. The trial court had discretion to deny defendant's *Faretta* motion as untimely, since defendant's trial was imminent and therefore defendant's motion was untimely. (*Faretta* motions found untimely: *Scott, supra,* 91 Cal.App.4th at pp. 1204-1205 [four days before trial]; *People v. Rudd* (1998) 63 Cal.App.4th 620, 626; *Frierson, supra,* 53 Cal.3d at p. 742; *Ruiz, supra,* 142 Cal.App.3d at p. 791 [three days before scheduled trial]; *Howze, supra,* 85 Cal.App.4th at pp. 1390-1391, 1397 [two days before trial]; *People v. Hill* (1983) 148 Cal.App.3d 744, 757 [five days before trial];

9

*Clark, supra,* 3 Cal.4th at pp. 99-100 [motion made three days after trial continued on day-to-day basis].) "When California Supreme Court authority has been applied, motions for self-representation made on the day preceding or on the trial date have been considered untimely. [Citations.]" (*Rudd,* at p. 626.)

Defendant's reliance on *Curry v. Superior Court* (1977) 75 Cal.App.3d 221, for the proposition defendant met each of the requirements necessary to assert his right to self-representation is misplaced. *Curry* is distinguishable in that the defendant in *Curry* made his request to represent himself at his preliminary hearing, not on the day his trial was scheduled to begin. In addition, the trial court denied the defendant's request in *Curry* in large part based on a finding that the defendant could not effectively represent himself. The court in *Curry* held that the defendant's competency to represent himself was not a valid basis for depriving a defendant of the right to self-representation. (*Id.* at pp. 227, 229.)

Here, the trial court's decision denying defendant's self-representation request was subject to the court's sound discretion because it was made on the day trial was scheduled to begin and therefore the request was not timely made. (*Howze, supra,* 85 Cal.App.4th at p. 1397.) In evaluating the factors to be considered in determining whether the trial court abused its discretion in denying defendant's *Faretta* motion, we conclude the trial court reasonably exercised its discretion in denying defendant's *Faretta* motion. As to the first factor, the record indicates that the quality of defendant's counsel's representation was satisfactory. On five occasions, on August 13 and 30, 2012, and December 6, 11, and 13, 2012, the court denied defendant's requests for new counsel

10

(*Marsden* motions).  In each instance, the court found that defendant's attorney was providing adequate representation.  The trial court therefore denied his request for a new attorney.  Defendant's *Faretta* motion was brought immediately after the trial court denied defendant's *Marsden* motion on December 6, 2012.  As to the second factor, defendant's *Marsden* motions, three of which preceded the *Faretta* motion, further demonstrated defendant's prior proclivity to attempt to substitute counsel.

As to the third factor, defendant's reason for requesting self-representation is apparent from the hearing on defendant's *Marsden* motion immediately preceding his *Faretta* motion:  The trial court denied his *Marsden* motion.  During the *Marsden* motion, defendant said he wanted new counsel because his attorney refused to file any of his paperwork he requested her to file, including a writ of habeas corpus or mandate, which "just keeps growing and it needs to be filed."  Defendant said his writ related to not receiving a speedy trial ("timing") and "ineffectiveness of counsel."  Defendant further complained his attorney had conferences, ate, and partied with the prosecutor and judge, in defendant's absence.  The trial court reasonably concluded defendant had not given the court any reason to relieve his attorney.  The court stated it believed his attorney was doing a good job and was very competent.  The record shows that defendant's reasons for requesting self-representation were not well-taken.

As to the fourth *Windham* factor, the length and stage of the proceedings, the trial court appropriately concluded defendant's *Faretta* motion was not timely, since defendant brought it on the day his trial was scheduled to begin.  The trial had already been continued at least once, the parties had announced ready to begin trial on more than

11

one occasion, pretrial motions were scheduled to be heard that day (Thursday), and jury selection was to begin the following Tuesday.

The fifth factor, "the disruption or delay which might reasonably be expected to follow the granting of such a motion," (*Windham, supra,* 19 Cal.3d at p. 128) fully supported the trial court's denial of defendant's *Faretta* motion. The trial court initially indicated that it would allow defendant to represent himself if he was willing to proceed with the trial without further delay. But when the court requested defendant to confirm he was knowingly and intelligently waiving his right to representation by an attorney (*Faretta* waiver), defendant refused to cooperate in waiving his right to counsel, either in writing or orally. Defendant refused to sign a written *Faretta* waiver, argued with the court about proceeding with the trial, and refused to state that, if he represented himself, he was willing to proceed with the pretrial motions and select a jury, as scheduled, without any further delays. Defendant said he wanted to represent himself several times but would "not sign papers at any time." Defendant continued to argue with the court that his attorney was ineffective and demanded another attorney, even though the court had already denied his *Marsden* motion. Defendant claimed his trial was "rigged."

When the court reiterated that defendant could either have his attorney represent him or represent himself, defendant said he wanted to represent himself but again refused to sign the *Faretta* waiver form. The court asked defendant if he was going to represent himself in the trial, scheduled to start the following Tuesday, or, alternatively, have his attorney represent him. Defendant said he was going to file a writ of mandate and then go from there. When the court told defendant he needed to answer his question or the

12

court would deny defendant's *Faretta* motion, defendant said he believed he could represent himself fairly.

The court then told defendant that since he would not sign the *Faretta* waiver form, the court was going to ask him to respond to the questions included in the waiver form. The court asked defendant if he understood he had a right to an attorney. Defendant said he understood this right. When asked if he understood that his attorney and the court recommended defendant's attorney represent defendant, rather than defendant representing himself, defendant said the judges wanted "to commit treason right and left." The court responded that defendant could "call it what you want" but defendant had not been very successful in his personal advocacy in the past before judges. Defendant replied that this was "because the corruptness in this court."

The court noted that, nevertheless, defendant would be better off being represented by an attorney. Defendant said this was true but his attorney did not know what she was doing and was ineffective. The court disagreed and told him that if he represented himself, he would be held to the same standard as a lawyer. When asked if defendant understood this, he began engaging in a diatribe, which included claiming he was "being held at $50,000 ransom against my desire and under duress and coercion submitting this contract and statement which relief can't be granted and the payment in full, silver and gold, 100 million dollars for this conspiracy in cash. [¶] . . . Fourth Amendment 1776 Constitution rights, nor the fact, liberty . . . ." The court interrupted defendant and told him he was not listening to what the court was saying. The court added that if defendant represented himself, he would also give up his right to appeal not being represented by

13

counsel. In response, defendant again asked for a different attorney. The court told defendant he would continue to be represented by his current attorney because, although defendant had a right to represent himself, he had to make a record that he could represent himself reasonably and competently, and the court questioned whether defendant could do so.

The court once again asked defendant if he would read and sign the *Faretta* waiver form, and defendant said he would not because he "won't not sign something that's violating my constitutional rights." The trial court stated that defendant's *Faretta* motion was denied because it was clear that defendant would not be able to represent himself adequately, primarily because defendant tended to go off on irrelevant tangents as to procedure and constitutionality. Defendant continued to make irrelevant statements and argue with the court about the constitution and claimed his attorney was lying regarding defendant's wife giving his attorney a book about the Fourth Amendment right to a speedy trial. The court stated again that defendant's *Marsden* and *Faretta* motions were denied. The court further noted that defendant had refused to sign the *Faretta* waiver form or verbally answer the questions in the form, and would only talk about speedy trial rights.

Under these circumstances, in which defendant brought his *Faretta* motion on the day trial was scheduled to begin and had continually argued with the court, raised irrelevant issues, and refused to cooperate in verifying waiver of his right to counsel, and frustrated the orderly administration of justice, the trial court reasonably concluded that allowing defendant to represent himself would result in disruption or delay of the trial

14

proceedings. (*Windham, supra,* 19 Cal.3d at p. 128; *Howze, supra,* 85 Cal.App.4th at p. 1397.) We therefore conclude the trial court did not abuse its discretion in denying defendant's *Faretta* motion.

"The judges of our courts are entitled to conduct their proceedings in an orderly and just fashion, and are not required to place their dockets and courtrooms at the mercy of obstreperous and unruly defendants with long track records of disruptive behavior. Such defendants, may not thwart the functioning of the criminal justice system in this state by making manipulative motions designed to result in the disruption of serious court proceedings for the perceived benefit of the defendant. Just as defendants have certain rights in court, so do courts have the power to preserve their dignity and their basic ability to function. In this case the court acted properly in denying the motion for self-representation and no abuse of discretion occurred." (*Howze, supra,* 85 Cal.App.4th at pp. 1398-1399.)

IV

CROSS-EXAMINATION OF DEPUTY MELENDEZ

Defendant contends the trial court improperly and prejudicially excluded his attorney's cross-examination of Melendez regarding (1) Melendez's observations and opinions as to whether defendant was mentally unstable at the time of the charged offense and (2) Melendez's training and experience dealing with mentally unstable individuals.

After Melendez testified he did not believe defendant was under the influence of alcohol or drugs at the time of the charged offense, defense counsel asked Melendez whether he thought defendant might have been mentally unstable and whether Melendez

15

had been trained to deal with mentally unstable people. The trial court sustained the prosecutor's relevance objections. The court stated that defense counsel could ask what Melendez "observed and saw and heard, but the rest just comes down to speculation. The activity . . . is going to have to speak for itself." The court also sustained the prosecutor's relevance objection when he asked Melendez if he saw "any behavior by [defendant] that indicated to you that he may not be mentally stable?"

The court noted that Melendez's opinions regarding defendant's mental stability were not within his area of expertise and therefore could not be considered. The court explained: "You can ask him what [defendant] was saying, what he was doing, how he was acting, but the witness is not going to be allowed to give an answer as to what that means from some kind of a mental health standpoint." Defense counsel responded that she was not seeking Melendez's opinion. Rather, she intended to inquire regarding Melendez's training as to people who were out of control. The court noted defense counsel did not ask about that.

The following day, defense counsel resumed cross-examination of Melendez and asked him whether he had "any training in dealing with people who might have mental health issues." The trial court again sustained the prosecutor's relevance objection, stating, "I'm not going to let him make an opinion about whether your client has a mental health issue." Defense counsel said she understood and that she was asking "[w]hether [Melendez] received any kind of training in dealing with someone who might have mental health issues." The court sustained the prosecutor's objection to this inquiry.

16

A criminal defendant has the right to a reasonable opportunity to effectively cross-examine the witnesses against him. (*Delaware v. Van Arsdall* (1986) 475 U.S. 673, 680 (*Van Arsdall*).) "'"However, not every restriction on a defendant's desired method of cross-examination is a constitutional violation. Within the confines of the confrontation clause, the trial court retains wide latitude in restricting cross-examination that is repetitive, prejudicial, confusing of the issues, or of marginal relevance. [Citations.] California law is in accord. [Citation.] Thus, unless the defendant can show that the prohibited cross-examination would have produced "a significantly different impression of [the witnesses'] credibility" [citation], the trial court's exercise of its discretion in this regard does not violate the Sixth Amendment. [Citation.]' [Citations.]" (*People v. Virgil* (2011) 51 Cal.4th 1210, 1251.)

Defendant argues that the excluded cross-examination was relevant to his defense that he lacked the intent required for a section 69 conviction, and to establishing whether Melendez used unreasonable or excessive force. Section 69 "sets forth two separate ways in which the offense can be committed. The first is attempting by threats or violence to deter or prevent an officer from performing a duty imposed by law; the second is resisting by force or violence an officer in the performance of his or her duty." (*In re Manuel G.* (1997) 16 Cal.4th 805, 814.)

"The first way of violating section 69 'encompasses attempts to deter *either* an officer's *immediate* performance of a duty imposed by law *or* the officer's performance of such a duty at some time *in the future*.' [Citation.] The actual use of force or violence is not required. [Citation.] Further, 'the statutory language [of the first clause of section

69] does not require that the officer be engaged in the performance of his or her duties at the time the threat is made. . . . [¶] The second way of violating section 69 expressly requires that the defendant resist the officer 'by the use of force or violence,' and it further requires that the officer was acting lawfully at the time of the offense. [Citation.]" (*People v. Smith* (2013) 57 Cal.4th 232, 240-241.)

The trial court did not abuse its discretion in excluding cross-examination of Melendez regarding (1) Melendez's opinions as to whether defendant was mentally unstable and (2) Melendez's training and experience dealing with mentally unstable individuals. The court permitted Melendez to testify concerning his observations of defendant's conduct but reasonably concluded that Melendez's opinion regarding defendant's mental state was beyond the scope of Melendez's expertise as a law enforcement officer. Therefore any cross-examination regarding his opinions as to defendant's mental stability or related training regarding mentally unstable individuals was irrelevant, speculative, and inappropriate. Evidence of Melendez and defendant's actual conduct at the time of the charged offense provided a sufficient basis from which the jury could make findings as to whether Melendez used excessive force and whether defendant possessed the requisite intent to commit a section 69 offense.

Even if Melendez's opinion regarding defendant's mental state and his training in that regard was relevant, exclusion of cross-examination was harmless error. The harmless beyond reasonable doubt standard of review applies to the denial of the opportunity to cross-examine adverse witnesses on matters pertinent to their credibility. (*People v. Chatman* (2006) 38 Cal.4th 344, 372; *Chapman v. California* (1967) 386 U.S.

18

18, 36.) We do not assume prejudice. (*People v. Hernandez* (2012) 53 Cal.4th 1095, 1108.) In determining whether the defendant was prejudiced by the improper limitation on cross-examination, we consider, among other factors, whether the excluded evidence was cumulative, the extent of the cross-examination that was allowed, the degree of evidence corroborating or contradicting the witness, and the strength of the prosecution's case. (*Hernandez,* at p. 1108, citing *Van Arsdall, supra,* 475 U.S. at p. 684.) Here, there was overwhelming evidence supporting defendant's conviction for attempting to deter or resist an executive officer from performing an official duty (§ 69).

V

*PITCHESS* MOTION

Defendant requests that we conduct an independent review of in camera *Pitchess* motion proceedings on October 11, 2012, to determine whether the trial court followed the appropriate procedure and properly exercised its discretion in concluding that records as to Deputy Melendez did not contain any discoverable information.

A defendant is entitled to discovery of a law enforcement officer's confidential personnel records if those files contain information that is potentially relevant to the defense. (*Pitchess, supra,* 11 Cal.3d at pp. 537-538; Evid. Code, §§ 1043-1045.) The discovery procedure has two steps. First, a defendant must file a *Pitchess* motion, containing affidavits "showing good cause for the discovery or disclosure sought, setting forth the materiality thereof to the subject matter involved in the pending litigation." (Evid. Code, § 1043, subd. (b)(3).) If good cause is shown, the trial court then examines the records in camera and discloses only those records and information that are relevant

19

and not subject to exclusion from disclosure.  (Evid. Code, § 1045, subds. (a) & (b); see also *People v. Thompson* (2006) 141 Cal.App.4th 1312, 1316.)  The threshold required for the trial court to conduct an in camera review is relatively low.  (*City of Santa Cruz v. Municipal Court* (1989) 49 Cal.3d 74, 83-84.)  The trial court is granted wide discretion when ruling on a motion to discover law enforcement officer records (*People v. Memro* (1995) 11 Cal.4th 786, 832), and we review that ruling for abuse of discretion.  (*Alford v. Superior Court* (2003) 29 Cal.4th 1033, 1039).

On September 5, 2012, defendant filed a *Pitchess* motion requesting production of "[a]ny evidence of, or complaints of false statements in reports and false claims of probable cause, or use of excessive force" regarding deputies Melendez and Bloomer. The Riverside County Sheriff's Department opposed the request.  At the hearing on defendant's *Pitchess* motion on October 11, 2012, the trial court found good cause to hold an in camera hearing on the motion as to Melendez's records, but not as to Bloomer's.  The court conducted an in camera review of Melendez's records, regarding those records showing excessive force within the last five years as to Melendez.  After questioning the custodian of records and reviewing the applicable records, the court found no discoverable material and ordered the records sealed.

Because defendant was not present at the records review hearing, he requests this court to conduct an independent review of the sealed transcript of the hearing and the records produced to determine whether any error occurred.  As requested, we have reviewed the sealed transcript and conclude the trial courts properly conducted a *Pitchess* document review hearing.  Melendez's records were not included as part of the record on

20

appeal. The sealed transcript, however, adequately identifies and describes the documents reviewed for this court to determine whether Melendez's documents were discoverable. The sealed reporter's transcript is thus sufficient for a meaningful appellate review. (*People v. Myles* (2012) 53 Cal.4th 1181, 1209.) Based on our review of the sealed reporter's transcript of the in camera *Pitchess* motion proceeding, we conclude Melendez's personnel file did not contain anything disclosable and the trial court properly exercised its discretion in excluding from disclosure Melendez's personnel records. (*People v. Samayoa* (1997) 15 Cal.4th 795, 827.)

VI

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON

J.

We concur:

HOLLENHORST

Acting P. J.

McKINSTER

J.

21