[Crim. No. 5871. Fifth Dist. May 6, 1983.]

THE PEOPLE, Plaintiff and Respondent, v.
GARY FRANK RUIZ, Defendant and Appellant.

**COUNSEL**

Michelle Migdal Gee, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian and John Van de Kamp, Attorneys General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Eddie T. Keller and Maria J. Fonseca, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**HANSON (P. D.), Acting P. J.**—This appeal is from a judgment of conviction of assault with a deadly weapon with enhancements for great bodily injury and two priors and a separate count of misdemeanor assault.

Appellant in a single argument for reversal urges that the trial court erred in denying appellant's motion to proceed in propria persona. (*Faretta* v. *California* (1975) 422 U.S. 806 [45 L.Ed.2d 562, 95 S.Ct. 2525].) Resolution of the issue is dependent upon finding whether the motion was a timely one, requiring the court to grant it if appellant's choice to represent himself was voluntarily and intelligently made. If we find appellant's motion to represent himself to be untimely, we must determine whether the court's denial of his request, based on the need for a continuance, was an abuse of discretion.

Appellant was charged in count one with attempted murder of Donald Moore "by means of an assault with a deadly weapon, to wit: a knife," (Pen. Code, §§ 664/187) with infliction of great bodily injury (Pen. Code, § 12022.7); in count two, assault with a deadly weapon on Robert Valdez (Pen. Code, § 245, subd. (a)); and in count three, robbery of Robert Valdez (Pen. Code, § 211) with use of a deadly weapon (Pen. Code, § 12022, subd. (b)). The information further alleged that appellant had served the prior prison terms within the meaning of Penal Code section 667.5, subdivision (b).[1]

On the fourth day of trial, the jury found appellant guilty of attempted murder in the second degree, in count one, and found true the great bodily injury allegation. In count two, the jury found appellant guilty of the lesser included offense of simple assault, a misdemeanor. Appellant was acquitted of the robbery charge.

Appellant filed a motion for new trial or modification of the verdict, asserting error in the court's instruction on implied malice in connection with the attempted murder charge. (See *People* v. *Murtishaw* (1981) 29 Cal.3d 733, 764 [175 Cal.Rptr. 738, 631 P.2d 446].) The court modified the verdict in count one, finding appellant guilty of the lesser included offense of assault with a deadly weapon (Pen. Code, § 245, subd. (a)), plus the great bodily injury enhancement; appellant was sentenced on the felony in count one as modified, on the misdemeanor, and on the two prior convictions.

FACTS

On May 7, 1981, Donald Moore was stabbed by appellant, whom he knew, after Moore returned home from work at Kenmar Village, a board-and-care facility for the mentally and physically handicapped. The stab wound was well over six inches deep and immediate surgery was necessary to save Moore's life. Appellant, who said he wanted to talk, lured Moore out of his house and across the street to a pickup truck. There, appellant asked his girl friend, Jenny Newquist, if Moore had caused her to be fired from her job at Kenmar Village.

---

[1]The priors were admitted.

Although Newquist replied that Moore had nothing to do with her firing, appellant became angry and stabbed Moore.

Karen Null, 14 years old at time of trial, testified that she saw the stabbing, and definitely felt she would recognize the assailant, but could not identify appellant as the perpetrator. She said after the knifing the man who stabbed Moore said, ". . . if he [sic] testified in court that something was going to happen in our house like get bombed and then . . . he took off . . . ."

Jenny Newquist testified at trial that she saw no stabbing, that after Moore and appellant talked, Moore just walked to his house and she and appellant drove away in a pickup. Detective Lawrence Brookter testified that he interviewed Newquist the evening of the stabbing. Newquist told the detective that appellant stabbed Moore and appellant threatened to kill her if she mentioned either the Moore stabbing or the Robert Valdez assault which occurred later that evening.

Appellant testified that he did not stab Moore and was elsewhere when the stabbing occurred. It was the theory of the defense that Moore was stabbed by a "[w]hite guy" "over a drug deal" but "framed" appellant for the crime because appellant had complained to the licensing authorities of illegal activities at Kenmar Village, including an allegation that Moore was dealing drugs. Appellant said that on May 7 he talked with Moore only 10 minutes. Moore went into the house and appellant and his girl friend left in a truck; Moore did not appear to be injured.

Robert Valdez, the victim in a second incident on May 7, 1981, failed to appear at trial although he was under subpoena by the prosecution, and a bench warrant had been issued. Valdez' testimony from the preliminary hearing was admitted into evidence at trial after the court ruled that he was unavailable as a witness and that the district attorney's office had exercised due diligence in trying to locate him. In his former testimony, Valdez said that appellant came out of a house where Valdez was visiting a friend and told Valdez that the latter owed appellant money. Valdez denied the accusation, and appellant took a swing at him. A fight ensued as Valdez tried to defend himself. Appellant then pulled out a knife. When Valdez saw the knife, he gave appellant money; at this point the police arrived.

*Proceedings on Motions for Substitution and Self-representation*

Appellant was arraigned on the information in superior court on July 8, 1981; at that time trial was set for August 27, 1981. On August 14, 1981, a trial confirmation hearing was held and the matter was confirmed for trial on the date previously set.

At a further trial confirmation hearing on Friday, August 21, 1981, appellant moved for substitution of his court-appointed counsel, six days before the scheduled trial date of August 27 (*People* v. *Marsden* (1970) 2 Cal.3d 118 [84 Cal.Rptr. 156, 465 P.2d 44]), and moved in the alternative to represent himself.

The reporter's transcript of the August 21 proceedings shows that a brief hearing was held concerning appellant's dissatisfaction with counsel and both motions were continued. Appellant complained that defense counsel had given copies of police reports and transcripts to his parents. Counsel responded that he had given a transcript to appellant's father at appellant's request. The court requested that counsel provide appellant with the police reports, and counsel stated he understood appellant had the reports but nevertheless would give them to appellant. The court scheduled a further hearing on the issue of counsel for Monday afternoon and stated that it would rule on the substitution motion before addressing the request to proceed in propria persona.

The proceedings resumed on Monday, August 24, 1981, at an *in camera* hearing with appellant, his attorney and court staff present. The court stated:

"Mr. Ruiz, the reason I am reopening this hearing is because there was a very short hearing, not much of an opportunity and I didn't hear much, but I wanted to make sure there is nothing there regarding the problems between you and your lawyer.

"I propose to deny your request to have your attorney relieved and represent yourself. So that is why I am having a hearing so we are back to the point at the beginning now. . . .

". . . . . . . . . . . . . . . . . . . . . . . . . .

"And then I will rule on this request again after I have heard everything."

Appellant expressed concern that his public defender had been collaborating with the district attorney, claiming that when Jenny Newquist was interviewed by the prosecution's investigator, the deputy district attorney assigned to the case identified himself to her as someone from the public defender's office. Appellant also charged that defense counsel had failed to investigate matters essential to appellant's defense theory of a setup, and had refused to seek a lineup with prosecution witnesses.

Appellant's attorney indicated that he had investigated the theory that appellant was not present at the scene of the assault and that the victim, Donald Moore, had a motive to lie. "The problem is and why [appellant] is upset is that we haven't been able to come up with much of anything that would help in a

trial." As to appellant's desire for a lineup, defense counsel explained that he had advised appellant against such a procedure because, if appellant were identified by witnesses at the lineup the People's case would be even stronger.

The judge said that appellant would have to work out such defense tactics as the lineup matter with his attorney. The court urged appellant to "work with your lawyer" and advised appellant that his counsel was "a highly trained skilled experienced lawyer . . . ." Appellant responded that defense counsel had interviewed him only four times and showed no interest in the case. Appellant said counsel told him: "[']They have you dead already on assault, you know, you are convicted.['] . . . I don't feel I can get a fair shake because in my mind he has doubt right there I am already guilty. So he can't handle something like that going into a courtroom."

At the court's request, defense counsel responded that he had told appellant that, as a matter of tactics, the attorney believed the best defense to the charge of attempted murder was to argue that appellant had committed at most an aggravated assault, and that the alibi/setup defense which appellant wanted to use involved a great risk that appellant would be convicted of a very serious charge. Appellant indicated that he understood the concern that he was charged with serious crimes, but insisted that he was not involved. ". . . I am trying to defend, I am trying to explain to [my attorney] what is happening here, where they are coming from, and why I am put in this position. Well, [he] feels by him going and talking to just a few people here, people that have something to do with Kenmar [Village], which they aren't going to state anything. I am doomed, Your Honor, unless he can investigate the way I want to investigate, go to certain places to find out facts." In open court the judge ruled that appellant had not shown ineffective assistance of counsel and denied the *Marsden* motion. The court stated: "The defendant has made a request to represent himself and impliedly in that request as an additional request would be the matter of continuing the trial."

The court then inquired as to the district attorney's position on the matter of a continuance.[2] The prosecutor opposed any continuance because the People had encountered great difficulty in securing the presence of Robert Valdez, who was under subpoena, and because other witnesses had expressed fears about testifying. The prosecutor pointed to evidence that appellant had threatened to kill people if they testified against him. The district attorney also cited several cases, including *People* v. *Windham* (1977) 19 Cal.3d 121 [137 Cal.Rptr. 8, 560 P.2d 1187], and argued that the motion to proceed in propria persona was not timely, that it could and should have been made "much earlier."

[2]The record shows no previous request for a continuance.

The court denied the motion, stating: ". . . the Court finds that there has been, or nothing has been demonstrated to this Court that Mr. Ruiz is trying to delay the case by these requests, but based upon, and I have reviewed the cases you have cited, and based upon that and the statements regarding the difficulties of the case, the fact of the difficulties of serving this witness and also in conjunction with matters that were taken up in the in camera hearing as related to some of these matters you have mentioned, . . . , your request to have Counsel relieved and to proceed representing yourself is denied."

Counsel then questioned whether appellant's motion to represent himself was conditional upon getting a continuance, and whether he wished to proceed with counsel in light of the court's ruling denying a continuance. Appellant requested clarification and the following colloquy ensued:

"THE COURT: Let me restate it.

"I understand you to say that if you could not have [defense counsel] relieved you wanted to represent yourself.

"MR. RUIZ: Yes, sir.

"THE COURT: And that you would need a continuance. I have indicated that I would not grant a continuance.

"MR. RUIZ: Yes, sir.

"THE COURT: And [the deputy district attorney] rightly points out I should also inquire did you still want to represent yourself in view of the fact that the Court proposes not to grant the continuance?

"MR. RUIZ: I do but I was denied.

"THE COURT: Well, that is what I am trying to make clear to you. I understood you—

"MR. RUIZ: Okay, okay. I understand now. I understand. Yes, I do want to have [this attorney] represent me."

## DISCUSSION

Appellant contends that the court's denial of his requests to represent himself and to continue the trial is reversible error because the *Faretta* motion was timely. This issue arises in an unusual and complicated posture. Appellant's motion for self-representation was asserted when appellant's motion for

substitution was denied. The *Faretta* motion also was founded on appellant's perception that his attorney was not investigating adequately appellant's defense theory and on their disagreements over tactics. The record allows the inference that this was not a new thought upon the part of appellant, but appellant offered no excuse for failing to bring the motion earlier.

The United States Supreme Court in *Faretta* v. *California, supra,* 422 U.S. 806 held that under the Sixth and Fourteenth Amendments a criminal defendant has a constitutional right to conduct his own defense subject to the trial court's determination that the accused's decision to represent himself is voluntarily and intelligently made. However, *Faretta* left unanswered many questions concerning implementation of this right. (See Yegan, *Faretta—The California Experience* (1978) 53 State Bar J. 384.)

In *People* v. *Windham, supra,* 19 Cal.3d 121, 127-129, the California Supreme Court held that to invoke the unconditional right of self-representation a defendant ". . . should make an unequivocal assertion of that right within a reasonable time prior to the commencement of trial. Accordingly, when a motion to proceed pro se is timely interposed, a trial court must permit a defendant to represent himself upon ascertaining that he has voluntarily and intelligently elected to do so, irrespective of how unwise such a choice might appear to be. Furthermore, the defendant's 'technical legal knowledge' is irrelevant to the court's assessment of the defendant's knowing exercise of the right to defend himself. [Citation.] However, once a defendant has chosen to proceed to trial represented by counsel, demands by such defendant that he be permitted to discharge his attorney and assume the defense himself shall be addressed to the sound discretion of the court. When such a midtrial request for self-representation is presented the trial court shall inquire *sua sponte* into the specific factors underlying the request thereby ensuring a meaningful record in the event that appellate review is later required. Among other factors to be considered by the court in assessing such requests made after the commencement of trial are the quality of counsel's representation of the defendant, the defendant's prior proclivity to substitute counsel, the reasons for the request, the length and stage of the proceedings, and the disruption or delay which might reasonably be expected to follow the granting of such a motion. Having established a record based on such relevant considerations, the court should then exercise its discretion and rule on the defendant's request." (Fns. omitted.)

Although *Windham* makes clear that a *Faretta* motion made after commencement of trial is not timely, it does not state a hard and fast rule delineating when a pretrial motion is timely. In *Windham,* the motion for self-representation was not made until the third and final day of testimony at trial and therefore was untimely by any standard, permitting the trial court to exercise discretion in deter-

mining whether to grant or deny the request. (*People* v. *Windham, supra,* 19 Cal.3d at p. 125.)

However, in a footnote the California Supreme Court discussed what it meant by "a reasonable time prior to the commencement of trial": "Our imposition of a 'reasonable time' requirement should not be and, indeed, must not be used as a means of limiting a defendant's *constitutional* right of self-representation. We intend only that a defendant should not be allowed to misuse the *Faretta* mandate as a means to unjustifiably delay a scheduled trial or to obstruct the orderly administration of justice. For example, a defendant should not be permitted to wait until the day preceding trial before he moves to represent himself and requests a continuance in order to prepare for trial without some showing of reasonable cause for the lateness of the request. In such a case the motion for self-representation is addressed to the sound discretion of the trial court which should consider relative factors such as whether or not defense counsel has himself indicated that he is not ready for trial and needs further time for preparation. Thus if the reason why a defendant makes a request for self-representation in close proximity to trial is because he disagrees with his appointed counsel's desire for a continuance, some delay may be necessary whether or not the defendant's motion is granted. In such a case the very reason underlying the request for self-representation supplies a reasonable justification for the delayed motion. Furthermore, as defense counsel himself seeks a continuance for the purpose of further trial preparation it would be illogical to deny a motion for self-representation under such circumstances simply because the motion is made in close proximity to trial. There may be other situations in which a request for self-representation in close proximity to trial can be justified. When the lateness of the request and even the necessity of a continuance can be reasonably justified the request should be granted. When, on the other hand, a defendant merely seeks to delay the orderly processes of justice, a trial court is not required to grant a request for self-representation without any ability to test the request by a reasonable standard." (19 Cal.3d at p. 128, fn. 5.)

Subsequent cases in California have addressed the timeliness of *Faretta* motions on a case-by-case basis , but we find no California case involving the particular factual situation presented here.[3] ■ We know that the erroneous denial of a timely *Faretta* motion is per se reversible. (*People* v. *Freeman* (1977) 76 Cal.App.3d 302, 308-310 [142 Cal.Rptr. 806]; *People* v. *Tyner* (1977) 76 Cal.App.3d 352, 355-356 [143 Cal.Rptr. 52].)

---

[3]Federal cases such as *Fritz* v. *Spalding* (9th Cir. 1982) 682 F.2d 782, 784, and *Chapman* v. *United States* (5th Cir. 1977) 553 F.2d 886, 894-895, hold that a *Faretta* motion is timely as a matter of law if made before trial, unless the trial court finds the motion was made for purposes of delay. We decline to follow these cases in light of the language of *Windham.*

In this case, several circumstances complicate the timeliness issue. No written motion to proceed in propria persona is in the appellate record[4] and the parties disagree in their interpretations of the transcript of the hearings on the motion.

Appellant's argument assumes that he made an unqualified request to proceed in propria persona on August 21, six days before trial, although the motion actually was not heard until three days before trial. Respondent points out that appellant wanted to represent himself *only* if the court denied his motion for substitution of counsel. Appellant's two motions clearly were connected; they had the same basis. Although a demand for self-representation was asserted unequivocally only after the court denied appellant's request for another attorney on August 24, 1981, three days before trial, we treat the motion for purposes of discussion as made on Friday, August 21, because the delay in hearing the *Marsden* motion apparently was for the convenience of the court. (See *People* v. *Lopez* (1981) 116 Cal.App.3d 882, 889-890 [172 Cal.Rptr. 374]; *People* v. *Morgan* (1980) 101 Cal.App.3d 523, 529-531 [161 Cal.Rptr. 664]; *People* v. *Potter* (1978) 77 Cal.App.3d 45, 50 [143 Cal.Rptr. 379].)

The record supports respondent's position that appellant's request to represent himself was necessarily *conditioned upon the granting of a continuance.* Because the trial judge held a full and lengthy hearing on the *Marsden* motion, the court was well informed on appellant's dissatisfaction with counsel's investigation of appellant's theory of defense and appellant's disagreement with counsel's tactical decision not to seek a pretrial lineup. After the judge indicated that he was denying the motion for self-representation because of difficulties which would result from the granting of a continuance, the court asked if appellant wished to proceed to trial in propria persona without a continuance. Appellant then expressly withdrew his motion to represent himself, stating, "Yes, I do want to have [this attorney] represent me." Under these circumstances, the court's refusal to grant a continuance clearly "amounted to a denial of [appellant's] request for self-representation, . . ." (*People* v. *Hall* (1978) 87 Cal.App.3d 125, 130 [150 Cal.Rptr. 628].)

We held in *People* v. *Morgan, supra,* 101 Cal.App.3d 523, 527-528, that where denial of a continuance amounts to de facto denial of a *Faretta* motion (*People* v. *Hall, supra,* 87 Cal.App.3d 125), the reviewing court must reverse if the defendant can show that he was entitled to have the *Faretta* motion granted. (See also *People* v. *Cruz* (1978) 83 Cal.App.3d 308, 324-326 [147 Cal.Rptr. 740].) However, *Morgan* further states, "When the motion for

---

[4]The clerk's minutes show denial of a *Marsden* motion on August 21 and the filing by appellant of a motion to proceed in propria persona. The clerk's transcript also recites that a *Marsden* hearing was held on August 24, 1981, and states that the motion was denied and then a *Faretta* motion was argued and denied.

self-representation is made in close proximity to trial, the motion need not be granted unless there is some showing of reasonable cause for the lateness of the request . . . ." (*People* v. *Morgan, supra,* 101 Cal.App.3d at p. 529.) In *Morgan,* the defendant did not unequivocally assert the right of self-representation until jury selection commenced, and we found no abuse of discretion in the denial of the untimely motion. (*Id.,* at pp. 529-531.)

■ Under the strong language of *Windham* and subsequent California appellate court cases, it is clear that only a timely and unequivocal motion for self-representation must be granted. Most of the published California cases discussing the timeliness requirement concern situations in which no unequivocal motion for self-representation was made until the beginning or middle of trial.[5]

In *People* v. *Herrera* (1980) 104 Cal.App.3d 167 [163 Cal.Rptr. 435] the reviewing court assumed arguendo that defendant had forfeited his *absolute* right to represent himself by bringing the motion on the morning of trial, although before jury selection; nevertheless, the court found an abuse of discretion in the trial court's denial of the motion where the defendant did not seek a continuance. In *People* v. *Tyner, supra,* 76 Cal.App.3d 352, 354-355, the appellate court found *Faretta* error where the defendant brought a motion to represent himself, without any request for a continuance, before the impanelment of a jury. In *People* v. *Freeman, supra,* 76 Cal.App.3d 302, 306-308, the case was reversed for *Faretta* error where defendant's request to proceed in propria persona was denied more than a month before the date initially set for trial. (*Id.,* at p. 306.)

■ We find no case holding that a motion for self-representation presented six days or three days before trial is untimely; the California Supreme Court in the *Windham* case did not speak specifically to two, or three or more days before trial or give some Pythagorean "secret magic of numbers."[6] However, the language of *Windham* quoted above indicates that the concept "in close

---

[5](See *People* v. *Windham, supra,* 19 Cal.3d 121 [third day of testimony]; *People* v. *Harris* (1977) 73 Cal.App.3d 76 [140 Cal.Rptr. 697] [after jury selection began]; *People* v. *Potter, supra,* 77 Cal.App.3d 45 [beginning of trial; also, equivocal assertion]; *People* v. *Lindsey* (1978) 84 Cal.App.3d 851, 860-861 [149 Cal.Rptr. 47, 2 A.L.R.4th 485] [held withdrawn; also untimely after first day of testimony]; *People* v. *Hall, supra,* 87 Cal.App.3d 125, 131 ["last possible moment before trial began," immediately prior to jury selection]; *People* v. *Morgan, supra,* 101 Cal.App.3d 523 [same as *Hall*]; *People* v. *Kaiser* (1980) 113 Cal.App.3d 754, 761-762 [170 Cal.Rptr. 62] [after two days of trial, jury empaneled and opening statements made]; *People* v. *Lopez, supra,* 116 Cal.App.3d 882 [after beginning of trial; also, equivocal and "playing games"].)

In *Windham,* in addition to the federal authorities cited, the Supreme Court discussed a New York case in which a motion to proceed in propria persona was held timely where presented before the prosecution's opening statement. (*People* v. *McIntyre* (1974) 36 N.Y.2d 10 [364 N.Y.S.2d 837, 324 N.E.2d 322]; *Windham, supra,* 19 Cal.3d at p. 127.)

[6]Sir Thomas Browne, Religio Medici (1642) part 1, section 12.

proximity to trial" (*People* v. *Windham, supra,* 19 Cal.3d at p. 128, fn. 5; *People* v. *Morgan, supra,* 101 Cal.App.3d at p. 529) is not necessarily fixed at one day before trial, but includes the situation with which we are confronted. Here, the motion was made on a Friday; the hearing was held on the following Monday and trial was scheduled to begin Thursday, with both defense and prosecution counsel ready to proceed and with a serious witness problem at hand. We hold that, under the circumstances surrounding appellant's request, the motion was made within that period of time contemplated by *Windham* in which the trial court may exercise its sound discretion in considering whether to grant or deny the motion.

In *People* v. *Potter, supra,* 77 Cal.App.3d 45, 50, the court concluded: ". . . the claimed assertion of the right of self-representation did not come 'within a reasonable time prior to the commencement of trial' (see *People* v. *Windham* (1977) 19 Cal.3d 121, 128 . . .). Thus, there was no deprivation of Sixth Amendment right."

The requirement of timeliness is to avoid unjustifiable delay or disruption of orderly court proceedings. Here, even though the trial judge expressly found there was no evidence that appellant had brought the motion for the *purpose* of delay, the manner in which the motion was brought and the reasons for making it show that disagreements had developed between appellant and his attorney over investigative efforts and trial tactics. Appellant had been in the local jail for three and one-half months and, obviously, his disapproval of the defense tactics chosen by his attorney did not arise just six days before trial. The hearings on the motions revealed that a continuance would be necessary for appellant to remedy the alleged shortcomings of counsel's prepared defense.

Under the total circumstances known to the court after a full inquiry, the court was correct in applying the requirement of timeliness to the *Faretta* motion at the hearing held three days before the date of trial. Because the motion was untimely, the court had discretion in ruling upon appellant's request.

"The *Windham* court . . . set out the factors which should be considered by a trial court when confronted with an untimely request that a defendant be allowed to discharge his attorney and proceed in propria persona. The court should weigh the reasons for the request, the quality of counsel's representation, the length and stage of the proceedings, the disruption and delay which might be expected if the request is granted, and defendant's prior proclivity to substitute counsel." (*People* v. *Hall, supra,* 87 Cal.App.3d 125, 132.)

The trial court followed similar procedures in its inquiry of appellant. Appellant's motion was unaccompanied by any showing of reasonable cause for its lateness. The trial court considered the adequacy of representation afforded by

defense counsel and found the quality satisfactory. Both attorneys were prepared to proceed with the Thursday, August 27, trial. (*People* v. *Morgan, supra,* 101 Cal.App.3d 523, 529-531.) The court relied upon the People's argument that the delay necessitated by appellant's request for continuance would disrupt the proceedings and prejudice the People's case because of fearful and reluctant witnesses, at least one of whom appellant allegedly had threatened to kill. The court in denying the motion for continuance properly considered the information regarding the appearance of witnesses[7] and the effect upon witnesses of a postponement of the trial.

Considerable weight is to be given to the trial court's exercise of its discretion in denying an untimely motion, and under the total circumstances we find no abuse of that discretion here. (*People* v. *Hall, supra,* 87 Cal.App.3d 125, 132.)

The judgment is affirmed.

Woolpert, J., and Hamlin, J., concurred.

A petition for a rehearing was denied June 3, 1983, and appellant's petition for a hearing by the Supreme Court was denied July 27, 1983. Bird, C. J., was of the opinion that the petition should be granted.

---

[7]Robert Valdez, the assault victim, did not appear at trial.