Filed 9/8/14  P. v. Johnson CA2/7

### NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B245460 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. MA054704) |
| v. | |
| JEFFERY L. JOHNSON, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Kathleen Blanchard, Judge. Affirmed.

Robert Bryzman, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Linda C. Johnson and Robert M. Snider, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Jeffery L. Johnson appeals from the judgment on his conviction and sentence of seven counts of second degree robbery in violation of Penal Code section 211 and two counts of being a felon in possession of a firearm in violation of Penal Code section 12021, subdivision (a)(1).  On appeal, Johnson contends that: (1) the trial court abused its discretion in failing to conduct a *Marsden* hearing (*People v. Marsden* (1970) 2 Cal.3d 118 (hereafter *Marsden*)), and (2) the trial court erred in denying Johnson's *Faretta* request (*Faretta v. California* (1975) 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (hereafter *Faretta*) as untimely.  As we shall explain, the court did not abuse its discretion in failing to conduct a *Marsden* hearing because the record does not establish that Johnson clearly indicated he wished to replace counsel.  Moreover, the court did not err in denying Johnson's *Faretta* request as untimely because it was within the trial court's discretion to deny a *Faretta* request made on the eve of trial.  Accordingly, we affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

**I.      The Crimes**

Four incidents make up the seven counts of second degree robbery alleged in the information and amended information.  During the first incident, Johnson entered a service station with a female accomplice on East Avenue K, and pulled out a gun while his accomplice took money from the cash register.  Ten days later, Johnson and his female accomplice grabbed all the cash out of the register of a sex shop after demanding money from an employee.  Nearly a week later, Johnson returned to the sex shop with his female accomplice, pulled out a gun, and retrieved more than $400 from the cash register. The fourth incident took place two nights later when Johnson and his female accomplice entered a smoke shop in Palmdale.  Johnson held a gun to an employee and took money from the cash registers.  The twosome then fled the scene in their car.  During the robbery, witness Brittney Birkmeyer ran out of the store with several other customers. She got into a car with two friends and chased Johnson's car for a mile or so until they were able to call the police and report the car's license plate number.

The information further charged Johnson with two counts of being a felon in possession of a firearm. Following the final robbery, a Sheriff's deputy pulled over Johnson. As Johnson exited his car, he knocked a handgun that was in his waistband onto the ground. Deputies then arrested Johnson. Later, when officers searched Johnson's bedroom, they found a Tec 9 semi-automatic pistol, ammunition for the Tec 9, and a case for the handgun Johnson discarded when arrested.

## II.    Johnson's In Court Behavior

The court admonished Johnson for his disruptive behavior several times over the course of the proceedings. At a pretrial proceeding on May 30, 2012, the court admonished Johnson for raising his voice and interrupting the court. A few months later at another pretrial proceeding, the court ordered Johnson removed from the courtroom when he continued to interrupt and speak over the court after being admonished by the court for this behavior.

On September 24, 2012, Johnson's attorney, Robert Nadler, brought forward a handwritten motion that Johnson had prepared himself. As Nadler was conceding, "I haven't actually completely reviewed it. But I understand it has something to with [sic] inaccuracies—" Johnson interrupted, "It's a *Marsden* motion." Nadler proceeded to inform the court that although he was not exactly sure what the motion contained, he understood it to have something to do with inaccuracies in the preliminary hearing transcript. Johnson then announced, "Transcripts been tampered with, my legal procedures been violated, my due process, my 6th Amendment right. It's all here." The court then admonished Johnson not to speak out in court or interrupt his attorney. Nadler requested permission from the court to review the motion that evening. The court then gave Nadler permission to review the motion and if he felt it was appropriate, to submit it before trial began.[1]

---

[1]    Nadler did not file the handwritten motion and the motion is not included in the record on appeal.

The court then asked Nadler if he was ready for trial, and as Nadler was replying that he could be ready, Johnson interrupted his attorney and said, "No, we're not." The court admonished Johnson to stop talking over the court and over his attorney. Johnson again interrupted and the following exchange ensued:

"[Johnson]: He's not my attorney.

"[Trial Court]: Yes, he is your attorney.

"[Johnson]: No, he's not. I'm going pro-per. He's not my attorney."

The court told Johnson that all motions must go through his attorney and, if the court were to consider a motion for Johnson to represent himself, Johnson needed to understand that he would be held to the same standard of conduct as an attorney. The court noted that it doubted Johnson could conduct himself properly because throughout this proceeding he had continued to interrupt the proceedings.

After Nadler and the Deputy District Attorney announced they were ready for trial, the court asked Johnson if he would be ready to go to trial within the next three days if granted pro-per status. Johnson replied that he would not be ready. The court then denied Johnson's request for self-representation as untimely, saying: "We are absolutely on the eve of trial. My supervising judge is here to assign this out as master calendar. This case is extremely old, as I said. The request is now made at 3:35 on the day the trial is going out and it is coupled with an absolute request to continue the case. And therefore, I find it untimely."

The case was promptly assigned to the same judge for trial, and jury selection began the following day. Opening statements began on the afternoon of September 26, 2012, two days after Johnson asserted his *Faretta* motion and purported *Marsden* motion. One week later, a jury convicted Johnson on all seven counts of robbery and both counts of being a felon in possession of a firearm. This appeal followed.

## *DISCUSSION*

### I. *Marsden* **Motion**

Johnson contends the trial court abused its discretion by failing to conduct a *Marsden* hearing after Johnson attempted to submit his handwritten motion. He argues

4

that the court improperly delegated the determination of the merits of the motion to defense counsel. We conclude the court did not abuse its discretion in failing to conduct a *Marsden* hearing because Johnson did not make a sufficiently clear *Marsden* request.

We review the failure to conduct a *Marsden* hearing for an abuse of the trial court's discretion. (*People v. Berryman* (1993) 6 Cal.4th 1048, 1070; *People v. Earp* (1999) 20 Cal.4th 826, 876.) A *Marsden* hearing is an informal hearing where the court inquires into the defendant's reasons for seeking substitute counsel and decides whether current counsel's performance has been so deficient as to require replacement by a subsequent appointed attorney. (*People v. Alfaro* (2007) 41 Cal.4th 1277, 1320.) A trial court's duty to permit a defendant to state his reasons for dissatisfaction with his attorney only arises when there is "at least some clear indication by defendant that he wants a substitute attorney" or in other words "when the defendant asserts directly or by implication that his counsel's performance has been so inadequate as to deny him his constitutional right to effective counsel." (*People v. Lucky* (1988) 45 Cal.3d 259, 281, fn. 8; *People v. Leonard* (2000) 78 Cal.App.4th 776, 787 quoting *People v. Molina* (1977) 74 Cal.App.3d 544, 549.)

An attempted *Marsden* request is not sufficiently clear when the defendant uses the term "*Marsden*," but the circumstances suggest the defendant is attempting to make an altogether different motion. For example, in *People v. Carter* (2010) 183 Cal.App.4th 522, 525-526, the defendant told the court, "I want a *Marsden* hearing." However, after a bit more discussion, the defendant clarified that he was actually seeking to represent himself. (*Ibid.*) The court held that under these circumstances, the trial court was not required to hold a *Marsden* hearing. (*Id.* at p. 528.)

Like the defendant in *Carter*, Johnson also used the term "*Marsden*" when the surrounding circumstances suggested he was not in fact making a *Marsden* motion. Although Johnson interrupted his attorney and claimed the document he was submitting was a *Marsden* motion, Johnson's attorney, who had at least taken a quick look at the document, informed the court he understood the document to be a motion to correct inaccuracies in the preliminary hearing transcript. Moreover, Johnson had an opportunity

5

to correct his attorney and explain the contents of the handwritten motion his attorney was submitting. Instead of saying, "I want a different lawyer," Johnson declared, "Transcripts been tampered with, my legal procedures been violated, my due process, my 6th Amendment right. It's all here."

In addition, the surrounding circumstances in this case further indicate that Johnson did not intend to make a *Marsden* motion but instead intended to make a *Faretta* motion for self-representation. Johnson made his *Faretta* motion for self-representation immediately after the discussion about Johnson's purported *Marsden* motion. In this situation, where a defendant simply uses the term "*Marsden*" when the circumstances otherwise suggest that the motion was instead to correct inaccuracies in the preliminary hearing transcript or, alternatively, a motion for self-representation, the trial court was not required to hold a *Marsden* hearing.

## II.     *Faretta* **Motion**

Johnson argues that the trial court erred in denying his *Faretta* motion as untimely, and further, that the court abused its discretion by denying the motion without considering the factors set forth in *People v. Windham* (1977) 19 Cal.3d 121. We conclude the trial court did not err in denying Johnson's *Faretta* motion because it was within the court's discretion to deny a *Faretta* motion made on the eve of trial. Moreover, the record contains sufficient evidence to support an inference that the trial court considered the *Windham* factors.

The court in *Faretta* held that a criminal defendant has a constitutional right to self-representation if the decision to do so is made voluntarily and intelligently. However, the law requires that requests for self-representation be made within a reasonable time prior to the commencement of trial. (*People v Windham, supra,* 19 Cal.3d at p. 128 & fn. 5.) Thus, requests for self-representation made after this time are subject to the discretion of the court. (*Id.* at p. 129 [The denial of an untimely *Faretta* motion is reviewed as an abuse of the trial court's discretion].) The appellant's due process right to counsel must then be weighed against the "orderly and speedy determination of criminal charges." (*People v. Strozier* (1993) 20 Cal.App.4th 55, 61.)

6

"Motions made just prior to the start of trial are not timely." (*People v. Scott* (2001) 91 Cal.App.4th 1197, 1205.) For example, *People v. Scott* held that the trial court did not err by denying the defendant's *Faretta* motion as untimely when it was made four days prior to the start of trial. (*Ibid.*) (See also *People v. Hill* (1983) 148 Cal.App.3d 744, 757 [*Faretta* motion made five days before trial was untimely and within trial court's discretion to deny]; *People v. Ruiz* (1983) 142 Cal.App.3d 780, 791 [*Faretta* motion made six days before trial was untimely].)

Johnson's *Faretta* motion was similarly untimely when it was made two days prior to the start of trial and on the same day the supervising judge was going to assign the case to a courtroom. Moreover, Johnson's motion was made at a time closer to the start of trial than the four, five, and six days that courts have determined are still an unreasonable time to move for self-representation prior to trial. Although in *Scott*, *Hill*, and *Ruiz* the cases had already been assigned to a courtroom, the record here indicates that the trial judge knew that trial would begin within a period of three days. (*People v. Scott, supra,* 91 Cal.App.4th at p. 1204; *People v. Hill, supra,* 148 Cal.App.3d at pp. 750-752; *People v. Ruiz, supra,* 142 Cal.App.3d at pp. 783-784.) Accordingly, the trial court did not err by ruling the motion untimely.

Furthermore, Johnson's argument that the trial court abused its discretion by failing to consider the *Windham* factors is without merit. There is no requirement that the court must explicitly cite the *Windham* factors or state its reasons for denying an untimely request for self-representation. (*People v. Windham, supra,* 19 Cal.3d at p. 129, fn. 6; *People v. Bradford* (2010) 187 Cal.App.4th 1345, 1354.) All that is required is that the record reflect "sufficient reasons . . . to constitute an implicit consideration of these factors." (*People v. Scott, supra,* 91 Cal.App.4th at p. 1206.) Under *Windham*, the trial court considers a number of factors when exercising its discretion to grant a request for self-representation that is not made within a reasonable time prior to trial, including: (1) the quality of counsel's representation of defendant; (2) the defendant's prior proclivity to substitute counsel; (3) the reasons for the request; (4) the length and stage of the

proceedings; and (5) the disruption or delay which might reasonably be expected to follow the granting of the motion. (*People v. Windham, supra,* 19 Cal.3d at p. 128.)

Here, the record reflects sufficient evidence of each of these factors. First, it appears that Nadler's representation of Johnson was of a satisfactory quality. Johnson's only complaint about Nadler's representation was that he failed to show up to a pretrial proceeding and sent another attorney in his place. Furthermore, there is no showing that Nadler was incompetent in any respect. In fact, Nadler brought Johnson's handwritten motion to the court's attention and filed his own *Romero* motion (*People v. Romero* (1996) 13 Cal.4th 497) with the court. Thus, it does not appear that the quality of Nadler's representation was a factor pointing towards the need for Nadler's dismissal. Moreover, although Johnson had not shown a prior proclivity to substitute counsel, "this factor alone does not undermine the court's conclusion that to grant the motion would unjustifiably delay trial or obstruct the orderly administration of justice." (*People v. Burton* (1989) 48 Cal.3d 843, 854.)

The court further explicitly considered that the trial was set to be immediately sent out for assignment to a courtroom; the case was very old; that it was doubtful Johnson could comport himself appropriately acting in propria persona as a result of his prior outbursts; and that Johnson would require a continuance if the *Faretta* motion was granted which would certainly have delayed the upcoming trial. Considering the facts in their totality, it was reasonable for the trial court to conclude that Johnson's request to represent himself was made for the purpose of delaying trial when it was made for the first time just a few days before trial was to begin and when it was coupled with a request for a continuance. Accordingly, sufficient evidence exists to support an inference that the trial court considered the *Windham* factors and therefore did not abuse its discretion. In light of the foregoing, the court did not err in denying Johnson's *Faretta* motion.

*DISPOSITION*

The judgment is affirmed.

                                                        **WOODS, J.**

**We concur:**


            **PERLUSS, P. J.**



            **SEGAL, J.**[*]

---

[*]Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

9