Filed 12/9/21  P. v. Singh CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C092034 |
| Plaintiff and Respondent, | (Super. Ct. No. 19FE010982) |
| v. | |
| RAGHVENDRA SINGH, | |
| Defendant and Appellant. | |

A jury found defendant Raghvendra Singh guilty of 14 counts of filing a false or forged instrument (counts 1-4, 6-13, 15-16—Pen. Code, § 115, subd. (a)).[1]  Each of these counts pertained to a separate proof of service among those filed in various legal proceedings.  The jury also found defendant guilty of two counts of conspiracy to file a false or forged instrument (counts 17 and 18).  These allegations pertained to grant deeds.  The jury found true an allegation that defendant was convicted of more than one violation

---

[1] Undesignated statutory references are to the Penal Code.

1

of section 115, subdivision (a), and the cumulative financial loss from all transactions exceeded $100,000.  (§ 115, subd. (c)(2).)[2]

The trial court sentenced defendant to a total term of 12 years in prison.

On appeal, defendant contends:  (1) the trial court erred in denying his *Faretta*[3] motion to represent himself; (2) the evidence does not support his conviction for count 12; and (3) the evidence does not support the jury's finding of a cumulative financial loss in excess of $100,000.  We agree the evidence does not support the cumulative loss finding and will remand for resentencing in light of this conclusion.  In all other respects, we affirm the judgment.

## I.  BACKGROUND

We summarize only the facts and underlying litigation that are relevant to the issues we will address in this appeal.

A.    *Elk Grove Property*

    1.    *Restraining Order and Default Judgment*

In December 2016, bullets fired from a house on Demonte Way in Elk Grove entered a neighbor's home.  A Neighborhood Watch was formed in response to this and other activities at the house.  Nathan was the "Neighborhood Watch captain."

The residents of the house told Nathan that defendant was the owner.  Defendant's wife, Kiran Rawat, was the actual owner.  Nathan tried talking to defendant about the problems.  Defendant "ran [Nathan] around in circles."  Defendant eventually accused Nathan of causing a "zombie nuisance," coming to his house with a gun, and killing someone at his property.  Defendant said Nathan's family would be in danger for a long

---

[2]  The trial court granted defendant's motion to dismiss count 14 under section 1118.1, and the jury was unable to reach a verdict on count 5.  The court declared a mistrial as to count 5, and the prosecution thereafter dismissed the count.

[3]  *Faretta v. California* (1975) 422 U.S. 806 (*Faretta*).

2

time.  As a result, Nathan sought a restraining order against defendant.  On September 29, 2017, the restraining order was granted.  The same day, a complaint was filed by "Kiran Singh" against Nathan seeking $90 million in damages.  On July 3, 2018, a proof of service (count 4) was filed in which "Susan Garcia" declared that she personally served Nathan with the summons and complaint.  Nathan testified this did not happen.  He only became aware of the lawsuit by searching his name on the court's website.  A lawyer had advised him not to take any action until he had been properly served.  Also, on July 3, 2018, "Kiran Singh" requested an entry of default and judgment.[4]  The request was granted, and a $90 million default judgment was entered against Nathan.  A criminal investigator for the Sacramento County District Attorney's office testified regarding his unsuccessful attempts to locate Susan Garcia.

Nathan obtained free legal services based on the fact he is in the military.  In mid-2019, his attorney successfully set aside the default judgment.  In the interim, Nathan's wife required hospitalization for migraines.  Nathan's "immune system attacked [the] nerves in [his] arm," and he needed about a year to recover.  Nathan testified that none of these medical conditions existed before the $90 million default judgment.

>    2.    *Nuisance Abatement Lawsuit*

The City Attorney for the City of Elk Grove testified that the City had received hundreds of complaints about the Demonte Way house before deciding to file a nuisance abatement lawsuit against defendant's wife in August 2017.  Defendant became part of the lawsuit when his wife filed a cross-complaint against him and the City.  In addition to the December 2016 shooting, the City had received complaints about illegal drug use, garbage, substandard housing, "people living in closets," "makeshift walls that were not

---

[4]  The request claimed "Susan Garcia" served Nathan by mail.  Nathan testified that did not occur, either.  This proof of service was the basis for count 5.  As previously indicated, the jury hung on this count.

up to code," excessive traffic and noise, and domestic disturbances at the house. Count 13 relates to a proof of service attached to defendant's "Second Reply" in support of a motion to compel discovery and for terminating sanctions. Count 15 relates to a proof of service attached to a reply to an ex parte motion seeking to meet and confer filed on behalf of defendant and his wife. Count 16 relates to a proof of service attached to a request for a stay of trial court proceedings filed on behalf of defendant and his wife. The City Attorney testified he was not actually served with these documents. He explained this made it difficult to keep up with the litigation, but fortunately the superior court docket was available online.

On January 15, 2019, the date of Kiran Rawat's deposition in this lawsuit, defendant told the City Attorney the case was moot because "the property had been transferred." Count 17 relates to a purported grant deed dated January 17, 2019, transferring the Demonte Way property from Kiran Rawat to Rajkumari Sanger as the trustee of the Sanger2 Living Trust. The court permitted the proceedings to continue despite the purported transfer. The City ultimately prevailed with a judgment against Rawat declaring the property a nuisance, awarding the City $25,000 in civil penalties, ordering the property to be cleaned up, and inviting the City to apply for a receiver. A receiver has since taken over the property.

B.       *Sacramento County Property*

A code enforcement supervisor for Sacramento County testified that he became familiar with defendant in working on a case regarding a house on Stockton Boulevard. The case had been referred to code enforcement from the Sheriff's Department, who had received complaints that 14 or 15 people lived in the house. Code enforcement connected some of the older residents with services, "but the rest of the people were basically squatters." Code enforcement told them to move and then repeatedly boarded up the property to no avail. In December 2013, the house was nearly burned to the ground and an occupant died.

4

The code enforcement supervisor testified that defendant owned the property and his wife was listed on the title. Defendant received the notices of code enforcement violations. He did not do any repairs. The County of Sacramento filed an action seeking the appointment of a receiver for the property. Defendant resisted receivership. Ultimately, the receiver demolished the house and fenced the vacant property. Count 9 relates to a proof of service attached to defendant's opposition to the receiver's petition to be discharged. Count 10 relates to a proof of service attached to defendant's notice of appeal. Count 12 relates to the proof of service attached to the opening brief in that appeal. Each of these proofs of service represented that the supervisor for code enforcement had been served. The supervisor testified he was not served with any of these documents and was only familiar with them from county counsel.

## II. DISCUSSION

### A. *Faretta*

#### 1. *Trial Court Proceedings*

On Thursday, January 30, 2020, the date set for defendant's trial, the trial court called the matter and asked for motions in limine and witness lists. Defendant announced he had talked to his attorney and wanted to represent himself. The court responded that defendant was, "a little late for that. We're set here for trial. You are too late to represent yourself. [¶] Plus, I understand, have you been deemed a vexatious litigant formally by the Courts in Sacramento County?" Defendant acknowledged that he had been deemed a vexatious litigant, at which point the court asked why he wanted to represent himself. Defendant asserted that his case was the first to involve the criminalization of filing false documents with courts, and that he should be allowed 30 minutes of oral argument in every hearing. Defense counsel informed the court that a section 995 motion had already been denied in which it was argued a proof of service could not be the basis for a section 115 violation.

5

Defendant responded that his attorney was not talking to him and only had "ten percent facts and . . . ten percent legal knowledge" about his case. Upon hearing this, the trial court indicated he would consider defendant's motion to be a *Marsden*[5] motion and immediately cleared the courtroom to conduct such a hearing.

Defendant had retained this attorney on October 15, 2019. Defendant said he understood his attorney could be discharged at any time and that he told his attorney on December 24, 2019, that he would represent himself. Defendant argued his attorney was not visiting him enough, and had refused to file various motions he wanted to file. Defendant indicated he had at least eight motions he wanted to file. Defense counsel believed many of defendant's proposed motions would only waste court time. He said visits with defendant would "end almost in yelling matches, and yelling matches of me trying to get [him to] *please focus on the case*."

Defendant suggested he did not believe trial could go forward and did not know why his counsel had indicated he was ready: "[T]he exhibits are not ready. They're not discussed. The witnesses are not discussed. It takes a lot of time to try for twenty-two felonies." Defense counsel said defendant would not speak to him about the substance of the case. Nonetheless, defense counsel stated he was ready to proceed to trial. The trial court explained defense counsel was sufficiently knowledgeable of the case, and defense counsel believed defendant had a potential defense in that the prosecution had to meet its burden of proof. The court advised defendant to work with his attorney.

After the trial court denied the *Marsden* motion, defendant asserted he should be able to represent himself so that he could "move on with [his] motions." The court responded that the motion was untimely as they were "in jury trial" and defendant's status as a vexatious litigant was "very restrictive in terms of allowing you to represent

---

[5] *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*).

6

yourself, but my reason to deny your request is [that it is] untimely." The court added that defendant's attorney was prepared to proceed. The court then denied the *Faretta* motion. The parties discussed administrative matters before adjourning for the afternoon. The court indicated it was usually dark on Fridays. As such, jury selection was set for the following Monday, February 3. The jury was selected on February 3, and opening statements and the presentation of evidence began on February 4.

### 2. *Analysis*

Defendant argues the court erred in denying his *Faretta* motion.

"In *Faretta*, the United States Supreme Court made clear that a criminal defendant has a federal constitutional right to represent himself if he voluntarily and intelligently so chooses. (*Faretta*, *supra*, 422 U.S. at pp. 835-836.) A trial court must grant a defendant's request for self-representation if the request is timely and unequivocal, and the defendant makes his request voluntarily, knowingly, and intelligently. [Citation.] If a self-representation motion is untimely, however, it is 'within the sound discretion of the trial court to determine whether such a defendant may dismiss counsel and proceed *pro se*.' " (*People v. Johnson* (2019) 8 Cal.5th 475, 499.)

"[A] *Faretta* motion is timely if it is made 'within a reasonable time prior to the commencement of trial.' " (*People v. Johnson*, *supra*, 8 Cal.5th at p. 499.) Our Supreme Court has "held on numerous occasions that *Faretta* motions made on the eve of trial are untimely." (*People v. Lynch* (2010) 50 Cal.4th 693, 722 (*Lynch*), abrogated on another ground in *People v. McKinnon* (2011) 52 Cal.4th 610, 637, 643.) In determining whether a defendant's pretrial *Faretta* motion is timely, "a trial court may consider the totality of the circumstances," including "the time between the motion and the scheduled trial date, . . . whether trial counsel is ready to proceed to trial, the number of witnesses and the reluctance or availability of crucial trial witnesses, the complexity of the case, any ongoing pretrial proceedings, and whether the defendant had earlier opportunities to assert his right of self-representation." (*Id.* at p. 726.)

7

Defendant argues his request was timely because the case had only been pending since June 2019, this counsel was retained in October 2019, the request was made prior to trial at his first court appearance following the denial of his section 995 motion, the trial would be short, the case was not complex, there was no indication any witnesses would be inconvenienced by the delay, and he did not seek a continuance. Our Supreme Court has not articulated a standard of review for determining the narrow question of whether a *Faretta* motion was timely. (*People v. Johnson, supra*, 8 Cal.5th at p. 501.)

Regardless, based on our independent review of the record and after taking into consideration the totality of the circumstances, we conclude the trial court properly treated defendant's *Faretta* motion as untimely. Defendant understood his retained counsel could be discharged at any time and yet made the *Faretta* motion one court day before the jury was selected. Defense counsel was prepared to proceed. While the trial was ultimately short, defendant argued the case involved novel legal issues and indicated he was not ready to proceed with the evidence and witnesses or without filing a significant number of motions. The totality of the circumstances showed the motion was made within that period of time in which the trial court may exercise its sound discretion in considering whether to grant or deny an untimely motion. (See *People v. Ruiz* (1983) 142 Cal.App.3d 780, 791 [motion was made on Friday with trial set to begin on Thursday].)

In exercising this discretion, "the trial court should consider, among other factors, 'the quality of counsel's representation of the defendant, the defendant's prior proclivity to substitute counsel, the reasons for the request, the length and stage of the proceedings, and the disruption or delay which might reasonably be expected to follow the granting of such a motion.' [Citation.] When a court denies an untimely request, its ruling is reviewed for abuse of discretion." (*People v. Buenrostro* (2018) 6 Cal.5th 367, 426.)

Defendant argues the trial court abused its discretion in denying his motion because he presented the court with "serious concerns" about his current counsel and did

not request a continuance. We disagree. Immediately before making his *Faretta* motion, defendant made what the trial court deemed to be a *Marsden* motion. The trial court inquired about defense counsel's representation of and relationship with defendant, to which defense counsel responded with great detail. We conclude the trial court thoroughly considered the quality of defense counsel's representation, and that the reason for defendant's request was his desire to file numerous motions that his attorney believed were frivolous. Defendant's disagreement with his attorney over trial tactics is "an insufficient reason to grant an untimely *Faretta* request." (See *People v. Wilkins* (1990) 225 Cal.App.3d 299, 309, fn. 4.) Moreover, while defendant did not ask for a continuance, he indicated during the *Marsden* hearing that he did not believe trial could go forward, as he believed neither the exhibits nor the witnesses had been "discussed." Further, he asserted he should be able to represent himself so that he could "move on with [his] motions." Thus, while defendant did not explicitly request a continuance, his arguments indicated further delay would be required if he represented himself. (See *People v. Buenrostro, supra*, 6 Cal.5th at p. 427 [explaining that although defendant did not explicitly request a continuance and asserted that she could take over her defense immediately, the defense she planned to take on would by its nature involve delay].) A continuance would have been necessary to allow defendant to "remedy the alleged shortcomings of counsel's prepared defense." (*People v. Ruiz, supra*, 142 Cal.App.3d at p. 791.)

On this record, the trial court did not abuse its discretion in denying defendant's *Faretta* motion.

**B.     Count 12**

Defendant challenges the sufficiency of the evidence to support his conviction for violating section 115, subdivision (a), in count 12.

Section 115, subdivision (a), provides: "Every person who knowingly procures or offers any false or forged instrument to be filed, registered, or recorded in any public

9

office within this state, which instrument, if genuine, might be filed, registered, or recorded under any law of this state or of the United States, is guilty of a felony."

" 'When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] We presume in support of the judgment the existence of every fact the trier of fact reasonably could infer from the evidence.' " (*People v. Covarrubias* (2016) 1 Cal.5th 838, 890.)

Count 12 is based on the proof of service attached to defendant's opening brief for his appeal related to the Sacramento County receivership proceeding. The jury was presented with evidence that defendant filed an appeal in this case, and a copy of an electronically signed opening brief and proof of service that corresponded with this appeal. The code enforcement officer testified he was never served with this document but had seen it before and obtained this familiarity "[f]rom my [c]ounty counsel." The proof of service listed the code enforcement officer and county counsel.

Defendant argues, "[t]he evidence is insufficient to establish that the document was filed – an essential element of the offense – because it does *not* bear a "filed" stamp, and the testimony of [the code enforcement supervisor] only establishes that he was aware of the document, but not that it was filed." We disagree. Whether the document is actually accepted for filing "is not relevant to the statutory proscription." (*People v. Garfield* (1985) 40 Cal.3d 192, 195.)

Substantial evidence supports the jury's finding that defendant violated section 115 by procuring or offering for filing a false proof of service in connection with his opening brief. The proof of service—like the attached opening brief—is electronically signed and contains the relevant case numbers. The proof of service states that, on August 19, 2019, "Ram Narayan" declared under penalty of perjury that he mailed the

attached Appellants' Opening Brief to various individuals including the code enforcement supervisor. The supervisor testified he was never served with the document, and he did not know if county counsel was served with the document, but "she monitors the courts." There was substantial evidence a reasonable juror could rely upon to determine defendant procured or offered for filing the falsified proof of service. This is not speculation but a reasonable inference from the circumstantial evidence presented. The lack of a "filed" or "received" stamp does not alter this conclusion.

Defendant observes the jury was instructed that to return a verdict of guilty on count 12, the prosecution had to prove defendant caused the document to be filed. But defendant provides no authority for the proposition that we are limited to considering only the law as given in the jury instructions when determining whether the evidence is sufficient. Indeed, in his reply brief, he cites the contrary authority. In it, the United States Supreme Court wrote: "A reviewing court's limited determination on sufficiency review . . . does not rest on how the jury was instructed." (*Musacchio v. U.S.* (2016) 577 U.S. 237, 243.) Rather, "a sufficiency challenge should be assessed against the elements of the charged crime, not against the erroneously heightened command in the jury instruction." (*Ibid*.) Because the evidence was sufficient for the jury to infer the document was procured or offered for filing, and that is sufficient under the statute, we must reject defendant's challenge to the sufficiency of the evidence as to count 12.

C.      *Cumulative Financial Loss*

As set forth above, the jury also found true the special allegation pursuant to section 115, subdivision (c)(2), that defendant committed more than one violation of section 115, subdivision (a), and the cumulative financial loss exceeded $100,000. Defendant challenges the sufficiency of the evidence to support this finding.

Section 115, subdivision (c), provides: "Except in unusual cases where the interests of justice would best be served if probation is granted, probation shall not be granted to, nor shall the execution or imposition of sentence be suspended for, any of the

11

following persons: [¶] . . . [¶] (2) Any person who is convicted of more than one violation of this section in a single proceeding, with intent to defraud another, and where the violations resulted in a cumulative financial loss exceeding one hundred thousand dollars ($100,000)."

As the People acknowledge, no published authority has interpreted the meaning of a loss in this context. Instead, we rely on authority interpreting former section 12022.6, subdivision (a), which provided that "[w]hen any person takes, damages or destroys any property in the commission or attempted commission of a felony, with the intent to cause that taking, damage, or destruction, the court shall impose an additional term as follows." (Stats. 2010, ch. 711, § 5.) The statute then set forth additional terms "[i]f the loss exceeds" certain dollar thresholds. (*Ibid*.)

Our Supreme Court explained, in this context, that "the defrauded agency's 'loss' should be calculated by subtracting the amount the government would have paid had no acts of fraud occurred from the amount the government actually paid. Any money that the government would have been obligated to pay had the fraud not occurred is not attributable to the fraud, and thus is not a 'loss' arising out of the criminal offense." (*People v. Crow* (1993) 6 Cal.4th 952, 962.)

The City Attorney for the City of Elk Grove testified that the City's litigation expenses related to its nuisance action were $112,000. During closing argument, the prosecutor argued this testimony was sufficient to demonstrate a loss in excess of $100,000. Defendant argues this loss was not caused by the proofs of service. He further asserts Nathan's testimony established only a de minimis loss related to docket searches, copy charges, and filing fees. The People argue the nuisance litigation was caused and protracted by defendant's fraudulent conduct, and this was sufficient evidence to uphold the finding. We agree with defendant. The City Attorney testified he did not know the amount of fees directly attributable to the falsified proofs of service, but "it would have required extra work to deal with the proof of service, to write the argument and brief as to

12

why the proof of service is defective, and to go on the Court's website to acquire the documents [¶] . . . [¶] as opposed to simply receiving the document and responding to the merits. [¶] So there was an extra cost, but we did not track the costs to what minute detail." Additionally, the City Attorney's testimony indicates the City decided to file the nuisance action in August 2017 in "an effort to clean up the property and bring it up to code and remove the problems with the property." This was before any of the charged offenses occurred. While these offenses extended the litigation somewhat, the evidence does not suggest the City of Elk Grove's expenses would have been less than $12,000 if defendant had merely never violated section 115, subdivision (a). We will reverse the jury's finding of a cumulative financial loss in excess of $100,000 within the meaning of section 115, subdivision (c)(2).

Defendant argues remand for resentencing is necessary so the trial court can exercise its discretion without the constraints imposed by section 115, subdivision (c). (See *People v. Belmontes* (1983) 34 Cal.3d 335, 348, fn. 8 ["Defendants are entitled to sentencing decisions made in the exercise of the 'informed discretion' of the sentencing court"].) The People do not address this point. We agree that remand is required.

## III.  DISPOSITION

We reverse the jury's finding of a cumulative financial loss in excess of $100,000 within the meaning of section 115, subdivision (c)(2), and remand for resentencing.  The judgment is otherwise affirmed.

/S/

_____

RENNER, J.

We concur:

/S/

_____

BLEASE, Acting P. J.

/S/

_____

ROBIE, J.

14